IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: 9:25-CV-80118

AMANDA WILLIAMSON,

        Plaintiff,

v.

HIRERIGHT, LLC,

        Defendant.

**COMPLAINT AND
JURY TRIAL DEMANDED**

## COMPLAINT

Amanda Williamson ("Plaintiff" or "Ms. Williamson") by and through her counsel brings the following Complaint against HireRight, LLC ("Defendant" or "HireRight") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment related background check report that Defendant published to Uber which falsely portrayed Plaintiff was adjudicated guilty of misdemeanor simple battery on May 12, 2020.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database

and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Uber that Plaintiff was convicted in or around May 2020 of misdemeanor simple battery with a file date of April 18, 2020. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff was never convicted in or around May 2020 for misdemeanor simple battery. Instead, the State Attorney submitted a "No File" with the court for the simple battery charge and the charge was dropped.

5. Uber denied Plaintiff's application to work as an Uber delivery driver after receiving a background check report from Defendant, which included the inaccurate misdemeanor conviction.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Palm Beach County, Florida regarding the misdemeanor simple battery offense with the file date of April 18, 2020, prior to publishing Plaintiff's report to Uber.

7. Had Defendant performed even a cursory review of the public court records, it would have discovered that Plaintiff was never adjudicated guilty in or around May 2020 for misdemeanor simple battery with the file date of April 18, 2020.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Upon information and belief, Defendant's inaccurate report cost Plaintiff a good paying job.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

13. Amanda Williamson ("Plaintiff" or "Ms. Williamson") is a natural person residing in Delray Beach, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant HireRight, LLC ("Defendant" or "HireRight") is a Delaware limited liability doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 14002 East 21st Street,

Suite 1200, Tulsa, OK 74134. Defendant HireRight can be served through its registered agent LegalInc Corporate Services, Inc. located at 624 South Denver Ave., Suite 300A, Tulsa, OK 74119.

15. Among other things, Defendant sells background check reports to online service platforms like Uber for their use in deciding whether to offer its platform and range of services to potential consumers looking to offer its services, such as in this case, transportation services.

16. These reports are provided for the purpose of evaluating a consumer for employment such that they may offer their driving services on the Uber platform to earn income. Further, these reports are also provided in connection with a business transaction initiated by the consumer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

22. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

//

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS AND BUSINESS TRANSACTIONS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates background check reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for consumers who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result

of the increasing availability of this data, there has been a boom in the background check industry.

32. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

33. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting an incorrect disposition in connection with the misdemeanor simple battery offense filed on April 18, 2020, in the Palm Beach County Courthouse. The charge against Plaintiff in connection with such offense was dropped and Plaintiff was not convicted.

40. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA") and even has representatives in leadership roles within the association. PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for an Account with Uber to Work as a Delivery Driver

41. Plaintiff owns a media company that produces a magazine which offers advertising space. However, Plaintiff's business has been struggling and has not been generating her any income as of late.

42. Therefore, in or around September 2024, Plaintiff applied for an account with Uber Technologies Inc. ("Uber") to work as an Uber delivery driver for supplemental income to pay her immediate and necessary financial expenses.

43. As a part of her application, Plaintiff consented to a background check ("background check report").

44. Plaintiff completed the required steps for the application process with Uber, apart from the background check report which was ordered by Uber from Defendant.

### Defendant Published an Inaccurate Background Check Report to Uber

45. Uber contracts with Defendant to conduct background checks, including criminal background checks, on its prospective drivers.

46. On or about September 24, 2024, Uber ordered a criminal background check on Plaintiff from Defendant.

47. On or about October 2, 2024, in accordance with its standard procedures, Defendant completed its background check report about Plaintiff and sold the same to Uber.

48. Within that background check report, Defendant published inaccurate information about Plaintiff.

49. Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing disposition of "Adjudicated Guilty" in connection with a misdemeanor simple battery charge filed on April 18, 2020, in the County Court of Palm Beach County, Florida, which appeared in the background check report as follows:

| | |
|---|---|
| Case Number | 50-2020-MM-003295-AXXX-MB |
| Comments | COUNTY COURT OF THE FIFTEENTH JUDICIAL, PALM BEACH COUNTY, FL. |
| Identifiers | Confirmation: Name, Date Of Birth. NAME ON FILE : WILLIAMSON, AMANDA |
| Count | 1 |
| Offense Date | Apr 17, 2020 |
| Offense | Simple Battery (Domestic) |
| File Date | Apr 18, 2020 |
| Disposition Date | May 12, 2020 |
| Disposition | Adjudicated guilty |
| Sentence | |
| Severity | Misdemeanor (or equivalent) - 1st degree misdemeanor |

50. Plaintiff was never adjudicated guilty in or around May 2020 for misdemeanor simple battery. Instead, the State Attorney submitted a "No File" with the court for the simple battery charge and the charge was dropped.

51. A cursory review of the widely available public court records confirms that Plaintiff never pled guilty to or was convicted of the misdemeanor simple battery charge with the file date of April 18, 2020.

52. Had Defendant actually consulted or obtained the widely available public court records regarding the misdemeanor simple battery charge, it would have clearly seen that a "No File" was submitted by the State Attorney and the charge was dropped.

53. The sole reason the inaccurate disposition of "Adjudicated Guilty" was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the background check report it sold about Plaintiff to Uber.

54. Had Defendant followed reasonable procedures, it would have discovered that misdemeanor simple battery charge against Plaintiff with the file date of April 18, 2020, was dropped and Plaintiff was not convicted of such charge.

55. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Uber inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Uber Denies Plaintiff's Uber Application

56. On or about October 2, 2024, Plaintiff was notified by Uber that her application for an account with Uber to offer delivery driver services was denied.

57. Uber specifically identified the misdemeanor simple battery charge with the file date of April 18, 2020, as the reason for the denial as demonstrated below:

> Dear AMANDA WILLIAMSON,
>
> Enclosed is a copy of your background check report you authorized us to order from HireRight, LLC.
>
> The specific records that will disqualify you from using the Uber app for Delivery requests are:
>
> Charge - 2020-04-18 SIMPLE BATTERY (DOMESTIC) AdjudicatedGuilty MISDEMEANOR (OR EQUIVALENT)

58. Thereafter, Plaintiff obtained a copy of the subject background check report from Defendant and was shocked upon reviewing that the background check report depicted that Plaintiff was adjudicated guilty for misdemeanor simple battery charge.

59. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that she was a convicted for the misdemeanor simple battery charge with the file date of April 18, 2020, both in relation to the Uber position, but also the impact of the same on her future.

60. Specifically, Defendant reported a conviction for the misdemeanor simple battery charge even though the charge was dropped by the State Attorney. The public court records were available to Defendant prior to publishing Plaintiff's background check report to Uber, but Defendant failed to obtain or perform even a cursory review of such information.

61. Plaintiff's application for an account to work as an Uber delivery driver was denied by Uber as a direct result of the "Adjudicated Guilty" disposition reported by Defendant in relation to the misdemeanor simple battery charge with the file date of April 18, 2020.

62. Thereafter, Plaintiff did not have the money to make her insurance payments and her license was suspended as a result.

**Plaintiff Disputes the Inaccuracy in Defendant's Consumer Report**

63. On or about November 22, 2024, desperate to secure employment with Uber and riddled with worry over the far-reaching impacts of the inaccurate information,

Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed with Defendant.

64. Plaintiff identified herself and provided information to Defendant to support her dispute.

65. Plaintiff specifically disputed the inaccurate reporting of a felony conviction that should have been reported as a misdemeanor.

66. Plaintiff specifically asked Defendant to investigate and correct its reporting in any consumer report about Plaintiff.

67. Sometime after, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and conceded its inaccurate reporting by correcting the reporting of the inaccurate "Adjudicated Guilty" disposition.

68. Defendant also communicated to Plaintiff that it had issued a corrected consumer report to Uber.

69. However, since Plaintiff lost her license after she was unable to pay for her car insurance coverage, Uber denied her employment.

### Plaintiff's Damages

70. Defendant's false report cost Plaintiff a promising job as an Uber delivery driver which offers a flexible schedule that would allow Plaintiff time to focus on her business.

71. Due to Defendant's unreasonable procedures in the first place, Plaintiff, struggling with a business that is underwater, is otherwise unemployed as of the date hereof.

72. Plaintiff has been unable to pay her bills and was evicted from her apartment on November 6, 2024. Plaintiff has been sleeping out of her car ever since. To make matters worse, Plaintiff's tags were seized by the police because she could not afford her insurance.

73. Furthermore, Plaintiff no longer has access to Wi-Fi, which severely diminishes her ability to operate her business.

74. Moreover, Plaintiff's cat needed life-saving emergency medical care, which Plaintiff could not afford. Plaintiff's cat has unfortunately passed away since then, which devastated Plaintiff.

75. Plaintiff reasonably believes that the harm Plaintiff suffers and continues to suffer as described above could have been avoided had Defendant used reasonable procedures to assure maximum possible accuracy in its reporting of the background check report to Uber.

76. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

77. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

78. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

79. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

80. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

81. At all times pertinent hereto, the above-mentioned background check report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

82. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

83. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

84. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and

punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//

RESPECTFULLY SUBMITTED this 27th day of January 2025.

/*s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
**CONSUMER ATTORNEYS**
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Amanda Williamson*